# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

Frank Betz Associates, Inc.,

              Plaintiff,

vs.

Builders Mutual Insurance Company,

              Defendant.

C.A. No.: 3:12-cv-0152

Magistrate Judge Joe B. Brown

## PLAINTIFF'S MOTION TO COMPEL
## AGAINST DEFENDANT

Pursuant to Rules 26 and 37, Fed.R.Civ.P., and LR 37.01, MDTN, Plaintiff Frank Betz Associates, Inc. ("Betz"), by counsel, hereby files its motion to compel discovery responses from Defendant Builders Mutual Insurance Company ("BMIC").

### Procedural History Concerning Discovery

BMIC has been actively seeking to delay this case and its responses to discovery since the beginning. It began by filing a Motion for Stay of Proceedings on March 30, 2012 (Doc. No. 21). The Court denied BMIC's motion by Order dated April 25, 2012 (Doc. No. 27).

Betz served its First Set of Interrogatories and First Request for Production of Documents ("Discovery Requests") on BMIC on April 27, 2012. On May 23, 2012, instead of answering the discovery requests, BMIC filed a Motion to Suspend Initial Case Management Order Deadlines (Doc. No. 28). This was a further effort by BMIC to delay any response to the discovery served in this case. The Court denied this motion by Order dated July 9, 2012 (Doc. No. 33).

On July 10, 2012, Betz's counsel began corresponding with counsel for BMIC regarding BMIC's past due discovery in an effort to obtain complete discovery responses from BMIC (attached as Exhibit A). On July 20, 2012, BMIC served initial responses to Betz's Discovery Requests. On July 26, 2012, BMIC produced a small number (687 pages) of documents responsive to Betz's Discovery Requests (attached as Exhibit B). These documents consisted of eight insurance policies: Three primary policies covering Signature Partnership, LLC over three different policy periods (from 2005 through 2008) and five umbrella policies covering Signature Homes, Inc. over five policy periods (2003 through 2008).

Without question, there were numerous relevant and responsive insurance policies that were withheld by BMIC in this initial production. As a result, Betz's counsel sent a letter dated August 20, 2012, outlining a number of deficiencies in BMIC's discovery responses and responsive documents produced thereto (attached as Exhibit C). BMIC's counsel responded with a letter dated August 24, 2012 (attached as Exhibit D). On September 7, 2012, BMIC's counsel sent a letter in follow-up to his letter of August 24, 2012 producing ten additional insurance policies – nine of which are directly at issue in this case (attached as Exhibit E). These nine relevant insurance policies included primary insurance policies covering Signature Homes, Inc. for six different policy periods (from 2002 through 2008) and three umbrella policies covering Signature Partnership, LLC for three different policy periods (from 2005 through 2008).

Because BMIC's supplemental production included nothing more than additional insurance policies, Betz's counsel responded with a letter dated September 17, 2012 regarding the parties' disagreements over the proper scope of discovery in this case and

advising of Betz's intention to proceed with filing its motion to compel (attached as Exhibit F).

<u>**The Coverage Issue Before the Court**</u>

The insurance coverage issue here is whether the "advertising injury" coverage available under the applicable policies covers the offense of copyright infringement. The coverage case is strong for Betz. The "advertising injury" language of the policies provides that: "'Personal and advertising injury' means injury … arising out of one or more of the following offenses: …g. Infringing upon another's copyright … in your 'advertisement.'" This language is straightforward. If one infringes another's copyright in an advertisement, the policy provides coverage.

Here, the Signature Defendants admitted that the allegedly infringing plans were routinely used in their advertisements on websites and in brochures that were widely used and distributed by realtors to advertise, market, and sell the infringing homes. Further, each of the infringing homes themselves is an advertisement, especially given the Signature Defendants' routine use of address number blocks that include the "Signature Homes" logo to identify Defendants as the builder of each infringing house, as indicated:



There is authority that the posting of the sign itself is enough to constitute advertising that triggers coverage under "advertising injury" policy. *King Construction, Inc. v. Continental Western Ins. Co.*, 123 S.W.3d 259, 265-266 (Mo. Ct. App. 2003) (sign posted in front of house during builder's construction of same from copyrighted plans was "advertising" under "advertising injury" policy language).

There is also authority that supports the conclusion that using copyrighted home designs as part of advertisements is covered by the policy language at issue here. In the case of *Ryland Group, Inc. v. Travelers Indemnity Co.*, 2000 Westlaw 33544086 (W.D. Tex. 2000) (attached as Exhibit G), the Court considered a case involving allegations of copyright infringement concerning home designs used by a builder to construct infringing homes:

> [T]he Court finds that there is a clear causal connection between [builder's] advertising activity and [author's] copyright claim. [Builder's] advertising activity itself was alleged to have infringed [author's] copyright and did not merely expose the infringement. Thus, the injury alleged 'emanates within the advertisement itself and requires no further conduct.'" (citations omitted).

Id., at *6.

Likewise, in *Interface, Inc. v. The Standard Fire Ins. Co.*, 2000 U.S. Dist. LEXIS 14019 (N.D.Ga. 2000) (attached as Exhibit H), in which the Court considered "advertising injury" coverage in the context of a defendant that used advertisements in which infringing carpet patterns were depicted. The Court found the insurer had a duty to defend the alleged infringer:

> Advertising activities are not defined in the policy. It is clear, however, that [defendant] advertised the products bearing the allegedly infringing patterns. …In this case, the advertising itself infringed on the copyrights allegedly owned by [plaintiff] because the ads bore images of the patterns. For that very reason, [plaintiff] sought production of [defendant's] promotional materials. As the Court of Appeals for the Ninth Circuit explained, "the

injury emanates within the advertisement itself and requires no further conduct." The causal connection between the advertising activity and the advertising injury could not be more clear.

Id., at *10 (internal citations omitted).

It is in this context that the discovery dispute between the parties should be analyzed.

## ARGUMENT

BMIC is obligated to provide complete discovery responses here because the information requested is relevant and falls within the broad scope of discovery under the rules. There are two broad categories of objections that have been made by BMIC – the first involves a few discovery requests where BMIC does not contest the legitimacy of the discovery sought, but instead claims that the response it has provided is adequate. The second is a claim that the information requested is beyond even the broad the scope of discovery allowed under the rules – essentially a claim that the only information that can possibly be relevant to this declaratory judgment action are the insurance policies at issue and the specific evidence presented at the trial below.

As demonstrated below, Betz believes it is entitled to complete responses to both categories of discovery requests that are at issue in this motion. First, Betz will address the discovery requests for which BMIC claims it has provided an adequate response. As required by Local Rule 37.01(b)(2), the following information from each of the discovery requests at issue is provided before the argument is presented for each:

<u>**Discovery Requests at Issue – Inadequate Responses**</u>

<u>**Interrogatory No. 5**</u>. Describe the specific factual grounds of each and every one of the Defendant's bases for denying coverage for the Claims and for each such ground identify the policy provision(s) on which Defendant is relying to justify its denial of coverage.

**RESPONSE: Objection. BMI objects to this interrogatory to the extent it seeks a legal conclusion as to the application of the facts from the underlying matter to the policies in question, and the resulting obligations and/or rights, which is for the court to determine.**

**However, without waiving said objection, and without limitation, BMI states as follows: The judgment entered in the underlying matter is not covered under any policy of insurance issued by BMI to any defendant in the underlying matter. Based on BMI's current knowledge, belief and understanding, the testimony and/or proof actually entered into evidence, and placed before the jury, in the underlying matter did not prove the existence of any acts of the defendants in the underlying matter that bring the verdict reached and/or the judgment entered in the underlying matter within the scope of coverage of any policy issued by BMI to any of the defendants, including, but not necessarily limited to, the following pertinent policy provisions:**

**SECTION I – COVERAGES**

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . . .**

    **b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.**

\* \* \*

**2. Exclusions**

    **This insurance does not apply to:**

a. **"Personal and advertising injury":**

   **(1) Knowing Violation Of Rights Of Another**

     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

   **(3) Material Published Prior To Policy Period**

     Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\* \* \*

   **(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

     Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

## SECTION II – WHO IS AN INSURED

**1. Except for liability arising out of the ownership, maintenance, or use of "covered authors":**

   a. **If you are designated in the Declarations as:**

     \* \* \*

    **(4) An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .**

     \* \* \*

   d. **Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:**

**Interrogatory No. 5.** This interrogatory requests the identification of the specific factual grounds of each and every one of BMIC's bases for denying coverage for the Claims (a defined term), and for each such ground, BMIC was asked to identify the policy

provision(s) on which it relied to justify its denial of coverage.

The responses provided to these interrogatories are inappropriate and deficient. While it appears that BMIC begins its response to this interrogatory by setting forth certain policy provisions in an unidentified policy that it claims negate coverage, it fails to set forth the specific factual grounds that support a declination of coverage. Moreover, BMIC fails to identify what policy it is relying upon in its response, the policy period it covers, whether that policy is a primary or umbrella policy, and the identity of the primary insured under such policy.

As indicated above, there are at least *seventeen* different insurance policies at issue in this case, covering two different insureds over seven different calendar years. Given that the BMIC insureds are separate corporate entities and existed at different times, it is imperative to know what policy language BMIC relies upon for each insured and for what policy periods.

Further, BMIC fails to articulate the specific factual grounds that justify its coverage position. Instead, it avoids answering the question by repeatedly contending that, "to the extent" the testimony and/or proof entered into evidence demonstrates some fact, then BMIC's coverage position is supported by such evidence. However, BMIC fails to identify the specific evidence upon which it relies. For example, BMIC claims that "at least 20 of the houses at issue were constructed prior to July 18, 2002," the date of inception of only two of the seventeen insurance policies at issue, and makes further reference to 57 houses built from the "Avant" plan, but fails to identify which houses or why these facts, if correct, negate coverage under *all* policies and for *all* insureds.

By way of further example, BMIC contends in this response that "to the extent the testimony and/or proof entered into evidence … establishes that the actions complained of … were committed willfully…," then there is no coverage. BMIC fails to point to any specific evidence of willfulness or explain how the jury verdict form or judgment in the underlying litigation suggests any finding on the issue of willfulness.

BMIC claims the determination of its coverage here depends solely on evidence offered at the underlying trial. However, absent some unusual circumstances, BMIC must have determined its coverage position very early in the underlying litigation when it made its decision to defend its insureds, most likely under a reservation of rights. Betz is entitled to know what coverage position BMIC took with its insureds long before trial in the underlying action, and what coverage position it is now taking in the pending declaratory judgment action *with respect to all of the applicable policies*.

It is inappropriate and unfair for BMIC to provide a generic answer in this context, for its coverage position concerning each different insured and for each policy period is dependent on the specific facts for each such insured at the applicable time. The objections offered by BMIC to this interrogatory are unfounded and the answer is not responsive. Betz is entitled to know BMIC's specific coverage position with respect to each and every applicable policy and for each of the insureds. Betz respectfully requests the Court order BMIC to provide a complete response to this interrogatory immediately.

**Interrogatory No. 7**. Identify and describe any advertising by any of the Signature Defendants that occurred prior to the inception of any of the policies at issue in this action and that infringed the Betz designs at issue in the Underlying Action.

**RESPONSE: Without the benefit of the trial transcript identifying the actual testimony and/or proof supporting the jury's findings in the underlying matter that any plans of Betz were actually infringed, BMI is unable to adequately respond to**

this interrogatory. Furthermore, BMI disagrees with and objects to any premises in this interrogatory that the Plaintiff has proven any actual advertising activities of the defendants in the underlying matter that may have allegedly caused any advertising injury, as defined in the policies.[1] However, without conceding any issue of whether the judgment in question is final and/or results in any covered damages, BMI states, based on its current knowledge, information and belief of the proof from the trial of the underlying matter, as follows: The alleged infringing activities began before the policy inception in 2002. Based on BMI's current knowledge, belief and understanding, at least 20 of the houses at issue were constructed and sold prior to July 18, 2002, the date of inception; 57 of the houses for which the Plaintiff sought disgorgement of profits were allegedly based on the "Avant" plan of Signature; and 18 of the 20 houses constructed and sold by Signature prior to the policy inception were "Avant" houses.

BMI expressly reserves the right to amend and/or supplement its response to this interrogatory once it receives the complete transcript from the trial of the underlying matter and has the opportunity to properly review the same.

**Request to Produce No. 19**. Produce all advertising material, in any medium, by the Signature Defendants that infringes any of the Betz designs at issue in the Underlying Action, including but not limited to any advertising material that includes depiction of any of the designs found by the jury in the Underlying Action to be infringements of Betz designs or depictions of any houses constructed from the infringing designs.

RESPONSE: Objection. BMI submits that the judgment in question is pending on appeal, rendering the judgment not final, or fully dispositive of any actual infringement and/or damages awarded against the defendants which are allegedly covered by any policies issued by BMI. As such, BMI disagrees with and objects to any premises in this request that the Plaintiff has officially and formally proven any actual advertising activities of the defendants in the underlying matter that may have allegedly caused any advertising injury, as defined in the policies.[2] However, without conceding any issue of whether the judgment in question is final and/or results in any covered damages, BMI states, based on its current knowledge, information and belief, as follows: The alleged infringing activities began before the policy inception in 2002. Based on BMI's current knowledge, belief and understanding, at least 20 of the houses at issue were constructed and sold prior to July 18, 2002, the date of inception; 57 of the houses for which the Plaintiff sought disgorgement of profits were allegedly based on the "Avant" plan of Signature; and 18 of the 20 houses constructed and sold by Signature prior to the policy inception

---

[1] BMI also states that the judgment in question is pending on appeal, rendering the judgment not final, or fully dispositive of any actual infringement and/or damages awarded against the defendants which are allegedly covered by any policies issued by BMI.

[2] BMI also states that the judgment in question is pending on appeal, rendering the judgment not final, or fully dispositive of any actual infringement and/or damages awarded against the defendants which are allegedly covered by any policies issued by BMI.

were "Avant" houses.  BMI states that based on its information and belief, the **Plaintiff is in possession of the information regarding the sales of the houses complained of by the Plaintiff in the underlying matter, the alleged similar plans, the alleged Betz designs and the information related to the sales of such homes – and to that extent, BMI objects to this request.[3]**

**Request to Produce No. 20**. Produce all documents that establish date(s) of any advertising material produced in response to the preceding request.

**RESPONSE: See response to No. 19.**

**Interrogatory No. 7; Requests to Produce 19 and 20.**  These discovery requests seek specific information concerning any advertising by any BMIC insured that occurred prior to the inception of the policy periods at issue.  Obviously, given that there are at least two different insured entities that committed copyright infringement in their advertising, the answer to this interrogatory must be made in a manner that is specific to each such insured.

However, BMIC fails to provide a response that is specific to each insured and further fails to identify any specific advertising activity that it contends would support its position of no coverage.  Instead, it simply states, without any reference to proof, that the "alleged advertising activity" began before 2002, and then makes a cryptic reference to the "Avant" home design, found by the jury in the underlying action to be an infringing design.   Notably, Signature Partnership, LLC was not created as a business entity until 2005, so it could not have conducted any advertising before 2002.  Further, BMIC fails to identify any advertising that pre-dates 2002 by *either* of the entity defendants, and further fails to explain why the "Avant" home design is separately identified in response to this interrogatory response, as if that infringing design should somehow be treated differently

---

[3] *See* Plaintiff's objections to BMI's requests for production, refusing to produce any document(s) allegedly produced during either the discovery or trial phase of the underlying matter.

for coverage purposes.

BMIC also fails to acknowledge that each infringing home is, in itself, advertising, such that the construction of each such house constitutes its own act of infringement in an advertisement. This negates BMIC's effort to claim the first publication of infringing material took place before the various applicable policy periods.

Once again, the objections offered by BMIC to this interrogatory are unfounded and the answer is not responsive. To the extent BMIC is taking a position that infringements committed by its insured in advertising occurred prior to the inception of any applicable policy period, Betz is entitled to know what advertising BMIC claims was first published by each insured before the inception of each applicable policy period. Betz respectfully requests the Court order BMIC to provide a complete response to this interrogatory immediately.

## Discovery Responses – BMIC's Objection as to Relevance

**Interrogatory No. 3**. As to the claims that were subject of the lawsuit encaptioned Frank Betz Associates, Inc. v. Signature Homes, Inc., et al., C.A. No. 3:06-cv-0911 (the "Underlying Action") filed by Betz against Signature Homes, Inc., Brian Burns, and Signature Partnership, LLC (the "Signature Defendants") or claims that are the subject of this action (collectively, the "Claims"), identify all individuals (including but not limited to employees of the Defendant, attorneys for Defendant, or anyone else) who participated in determining Defendant's coverage position with respect to the Claims or providing advice concerning the same; describe the role the individuals played and the decisions they made; identify all documents setting out any communications with or from those individuals concerning coverage; and set out the time periods during which those individuals participated in determining Defendant's coverage position.

**RESPONSE: Objection. This interrogatory is outside the scope of applicable discovery for this matter. Any information related to any individuals involved in BMI's decisions and/or determinations as to coverage are irrelevant to the sole question in this case – that being whether the judgment in question (as based on the proof actually placed before the jury) is covered under the relevant policies in**

question – and is not calculated to lead to the discovery of admissible evidence.[4] Furthermore, to the extent this interrogatory seeks information covered by the attorney-client privilege, including communications between BMI and its insured related to any coverage issues, BMI objects to this interrogatory on that basis, as well.

**Interrogatory No. 4**.  Identify all communications between Defendant and any of the Signature Defendants relating to the Claims, including but not limited to any communications concerning whether or not there is or might be coverage for the Claims under each policy at issue in this action.

**RESPONSE:  Objection.  This interrogatory is outside the scope of applicable discovery for this matter.  Any information related to BMI's communications with the defendants in the underlying matter are irrelevant to the sole question in this case – that being whether the judgment in question (as based on the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[5]**

---

[4] *E.g., Perdue Farms Inc. v. National Union Fire Insurance Co. of Pittsburgh*, 197 F. Supp.2d 370 (D. Md. 2002) (recognizing that an inquiry into the coverage for a judgment against an insured requires the court "to determine 'what was placed before the jury, and what was necessarily decided by the jury.'"); *Luppino v. Vigilant Ins. Co.*, 677 A.2d 617, 622 (Md. Ct. Spec. App. 1996) (stating, "The [duty to indemnify] ordinarily depends on the eventual outcome of the underlying case – whether it results in a judgment for the plaintiff and, if so, whether basis for that judgment is conduct within the policy coverage."); *Ethicon, Inc. v. Aetna Cas. & Sur. Co.*, 737 F. Supp. 1320 (S.D.N.Y. 1990) (recognizing that in a declaratory judgment action on a duty to indemnify/coverage issue, following a trial on the underlying claim, "[t]he Court must determine if the findings of the jury in the [underlying] action fit within the coverage of the existing insurance policies and, if so, whether any of the exclusions in the policies apply to those findings."); *American Casualty Co. v. Baker*, 22 F.3d 880 (9th Cir. 1994) (agreeing with rule that "extrinsic evidence is irrelevant to interpretation of this 'unambiguous' policy language"); *Unger v. Liberty Mutual Insurance Co.*, 849 F. Supp. 839, 846 (E.D.N.Y. 1994) (noting that, "resort to extrinsic evidence is appropriate only to resolve ambiguities); *U.S. Gypsum Co. v. Admiral Insurance Co.*, 643 N.E.2d 1226, 1254 (Ill. App. Ct. 1994) (recognizing that "[t]he prior dealings of a party are a matter of parole evidence that should not be considered unless the language of the policies is ambiguous"); *Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 212 (Mo. Ct. App. 1983) (explaining that correspondence between insurer and insured, and course of dealing, was irrelevant with regard to interpreting  policy language that was unambiguous); *Gulf Metals Industries, Inc. v. Chicago Insurance Co.*, 993 S.W.2d 800 (Tex. App. Austin 1999) (recognizing that history of promulgation of policy provision is irrelevant where provision is not found to be ambiguous); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Insurance Co.*, 868 F. Supp. 1278 (D. Utah 1994) (concluding that drafting history of exclusion was irrelevant because "extrinsic evidence will not be considered when policy is unambiguous"); *Indiana Gas Co.v. Aetna Casualty & Surety Co.*, 951 F.Supp. 780 (N.D. Ind. 1996) (agreeing with argument that insurer's claims manual was irrelevant where policy was unambiguous); *Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583 (1998) (ruling that, "writings or memos by insurance company personnel venturing their opinions as to whether a defense should be afforded do not constitute "admissions" of a defense duty"); *Wackenhut Services, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 15 F. Supp.2d 1314, 1323 (S.D. Fla. 1998) (recognizing that testimony of insurer's employees about opinions on coverage are irrelevant to issue of whether coverage exists under a certain policy).

[5] *See* FN 1.

**Request to Produce No. 3**.   Produce all documents related in any way to the claims that were the subject of the lawsuit encaptioned *Frank Betz Associates, Inc. v. Signature Homes, Inc., et al.,* C.A. No. 3:06-cv-0911 (the "Underlying Action") filed by Betz against Signature Homes, Inc., Brian Burns, and Signature Partnership, LLC (the "Signature Defendants") or the claims that are the subject to this action (collectively, the "Claims").

**RESPONSE: To the extent this request seeks production of any documents outside the policies issued by BMI to the defendants in the underlying matter and the trial transcript and exhibits from the underlying matter, BMI objects to this request as being outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[6]   Furthermore, to the extent that the Plaintiff seeks any information related to the pre-trial activities in the underlying matter (which BMI notes is irrelevant to this matter), Plaintiff is in possession of the same and/or has access to the same.   BMI also objects to this request in that the Plaintiff already has possession of all information and/or exhibits entered into the record during the trial of the underlying matter.**

**Without waiving said objection, see documents labeled BMI 000001-687 and the transcript and exhibits from the trial of the underlying matter.   The documents labeled BMI 000001-687 are available for copying and inspection at Plaintiff's expense at the offices of BMI's counsel at a mutually agreeable date and time.**

**BMI expressly reserves the right to amend and/or supplement its response to this request once it receives the complete transcript from the trial of the underlying matter and has the opportunity to properly review the same.**

**Request to Produce No. 4**.   Produce Defendant's complete claim files for the Claims, including without limitation those files maintained in Defendant's field office, regional office, home office, or any other office.

**RESPONSE: Objection.   This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[7]**

---

[6] *See* FN 1.
[7] *See* FN 1.

**Request to Produce No. 5**.   Produce copies of each file created, maintained, or kept by an adjuster, claim manager, or other employee of Defendant concerning the Claims, as those files were maintained in the ordinary course of business, including but not limited to files created, maintained, or kept in electronic form.

**RESPONSE: Objection.  This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[8]**

**Request to Produce No. 7**.   Produce all documents related to or setting forth any reinsurance or loss reserves set aside for the Claims at all times since Defendant was first notified of the Claims.

**RESPONSE: Objection.  This request is outside the scope of applicable discovery for this matter.  Any information related to any of BMI's decisions as to loss reserves and/or reinsurance is irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[9]**

**Request to Produce No. 8**.   Produce all documents containing or related to any and all communications within Defendant's organization, communications between Defendant and the other parties in this action, and communications between Defendant and any agent, broker, or other third party concerning each Policy or Claims.

**RESPONSE: Objection.  This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[10]**

**Request to Produce No. 9**.   Produce all documents in the possession or control of Carl Warbington regarding the claims.

**RESPONSE: Objection.  This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[11]**

---

[8] *See* FN 1.
[9] *See* FN 1.
[10] *See* FN 1.
[11] *See* FN 1.

**Request to Produce No. 10**. Produce every document or communication by Carl Warbington concerning the Signature Defendants.

**RESPONSE: Objection. This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[12]**

**Request to Produce No. 11**. Produce all advertising, promotional, marketing and/or sales documents or other materials related to each Policy at issue in this action or relating to "advertising injury" coverage offered by Defendant in its commercial general liability policies or commercial umbrella policies for the period beginning January 1, 2000, through the present.

**RESPONSE: Objection. This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[13]**

**Request to Produce No. 12**. Produce all documents concerning any interpretation, understanding, or instruction with regard to any "advertising injury" provision contained in any commercial general liability policy or commercial umbrella policy issued by Defendant.

**RESPONSE: Objection. This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[14]**

**Request to Produce No. 15**. Produce all documents received from the Signature Defendants or from any third parties relating to the claims or defense of this case, including but not limited to documents sought or obtained through subpoenas.

**RESPONSE: Objection. This request is outside the applicable scope of discovery for this matter and irrelevant to the sole question in this case – that being whether the judgment in question (as based upon the proof actually placed before the jury) is**

---

[12] *See* FN 1.
[13] *See* FN 1.
[14] *See* FN 1.

**covered under the relevant policies in question – and is not calculated to lead to the discovery of admissible evidence.[15]**

**Interrogatory Nos. 3 and 4; Request for Production Nos. 3 -- 5, 7 -- 12, and 15.**

The remaining discovery requests at issue all fall under the same general category of requests, and BMIC asserts the same objection to them all. BMIC contends that the information sought is not relevant or discoverable under the Rules. The discovery is generally directed at gathering information from BMIC concerning the coverage position it has taken in this case, as compared to its coverage position as reflected in communications with its insureds, in its own advertising materials, and otherwise.

The information requested by Betz concerning loss reserves, other policy interpretations by BMIC, and communications with its insureds in the underlying action is all relevant for discovery purposes to determine if BMIC has treated different insureds differently concerning the same policy language at issue here, or taken inconsistent positions with respect to coverage with the Signature Defendants as compared to the coverage position it takes now. *See, e.g., Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 106-07 (D.N.J. 1990) (holding that information regarding the claims of other insureds with identical or similar policy language "is relevant for purposes of discovery since it may show that identical language has been afforded various interpretations by the insurer").

Information pertaining to reserves is relevant, such as here, where an insurer sets reserves for a particular case and then denies liability for the claim to its insureds. *See U.S. Fire Ins. Co. v. Bunge North America, Inc.,* No. 05-2192-JWL-DJW, 2007 WL

_____

[15] *See* FN 1.

1531846, at *9 (D. Kan. May 25, 2007) (attached as Exhibit I) (granting motion to compel loss reserve information). Moreover, such information is admissible as an admission against interest. An "admission against interest" is a "statement made by one of the parties to an action which amounts to a prior acknowledgement by him that one of the material facts relevant to the issues is not as he now claims." *Black's Law Dictionary*, 6th Ed. (West 1990). Further, federal courts have consistently upheld broad discovery limits for any matter that bears on, or could reasonably lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sander*s, 437 U.S. 340, 351 (1978); *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Each party must be permitted to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial. *Nestle Foods Corp. v. AETNA Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (*citing Goldy v. Beal*, 91 F.R.D. 451, 454 (M.D. Pa. 1981)).

The information that Betz seeks with respect to the reserves established by BMIC is, at a minimum, discoverable for purposes of demonstrating that BMIC perceived the claims made by Betz against its insureds to be valid and, as a result, set aside certain reserves for the claim. Moreover, Betz's requested information is likely admissible to impeach BMIC's subsequent refusal to provide coverage to the Signature Defendants. *Seaboard Coast Line R. Co. v. Nieuwendaal*, 253 So.2d 451 (Fla. App. 2 Dist. 1971) (an admission against interest may be introduced into evidence as substantive evidence of the truth of the matter asserted even though the person making the admission against interest subsequently denies making the admission); *Robinson v. Pepper*, 116 So. 4 (Fla. 1928) (admissions against interest are competent evidence). As a result, BMIC should be compelled to produce any documents regarding any reserves established by it.

For its part, BMIC takes the position that, beyond the insurance policies themselves, the only other information that has any possibility of being relevant to the claims and defenses at issue in this case is that which was presented as evidence at the trial of the underlying case. This is far too narrow a view, as indicated by the cases cited above. As a more general proposition, Betz also has authority supporting its position that a court may look beyond such evidence, both in discovery and on the merits, to determine coverage where such information goes to issues that were not necessarily decided in the underlying case, as is likely the case here.

For example, in *Aetna Life Ins. Co. v. Maxwell*, 89 F.2d 988, 989 (4th Cir. 1937), a plaintiff won a judgment against a physician for negligence. Unable to recover from the bankrupt physician, the plaintiff brought an action against an insurer under a group liability policy issued by the insurer to a medical society of which the physician was a member. *Id.* The evidence in the suit against the physician involved malpractice, most of which occurred prior to the onset of the policy period. *Id.* at 990-92. In the coverage dispute the district court excluded evidence, offered by the insurer to show that the negligence occurred prior to the effective date of the policy, on the grounds that the insurer "had its chance in the first case . . . and should not be allowed to retry the issues in the pending suit." *Id.* at 991. The jury found for the plaintiff against the insurer for damages suffered through the malpractice which the jury determined had occurred during the policy period. *Id.* at 990.

The Fourth Circuit reversed and remanded on the basis that rejection of the insurer's proffered testimony was prejudicial error. *Id.* at 991.

> [I]f the insurer undertakes the defense of the action against the insured under
> an agreement of nonwaiver[, a] judgment rendered under such circumstances

is not conclusive in a subsequent suit between the parties to the contract of insurance unless the liability over is as broad as the original liability; and, if the insured wishes to rely upon the judgment, he must show that the very ground of liability upon which his suit is based was found to exist and was necessarily adjudicated in the prior action. ***The plaintiff in the pending case stands in the shoes of the insured by virtue of the express terms of the policy, and it follows that the judgment in the prior case is not conclusive here as to issues which were not there determined.***

*Id.* (citations omitted) (emphasis added).

Another example may be found in *Hartford Mut. Ins. Cos. v. Agean, Inc.*, No. 1:09CV461, 2011 WL 2295036, at *7 (M.D.N.C. June 8, 2011) (attached as Exhibit J), where a defendant in a declaratory judgment action objected to all an insurer's discovery requests based primarily on the contention that the only issue before court was whether the insurer had a duty to defend the insured in the underlying action for alleged TCPA violations. The defendant's typical responses objected to the requests:

> because the only issue presently before this court is whether Plaintiff has a duty or obligation to defend [the insured]. Because it is well established [under] North Carolina law that the duty to defend is determined by comparing the allegations of the Complaint to the four corners of the insurance policy, any discovery attempting to "get behind" the allegations of the Complaint is prohibited and objected to.

*Id.* In granting the insurer's motion to compel discovery responses, the court found that the insurer's amended complaint raised two separate arguments relating to its duty to indemnify:

> First, there is an issue as to whether [insurer] must indemnify [insured] absent proof of an actual receipt of a facsimile advertisement in violation of the TCPA. Second, the amended complaint raises an issue as to whether the prior publication exclusion bars coverage for identical faxes published during the second policy period. The discovery sought by [insurer] is relevant to these two issues from the amended complaint. [Defendant] cannot refuse to comply with discovery requests for this information on the grounds that [insurer] may not prevail on these issues at a later date. The issue in this context is not whether these claims are meritorious, but whether the requested discovery is relevant to these claims. While [defendant] correctly asserts that it would be

inappropriate for this court to currently decide on the duty to indemnify issue, that does not mean that he can refuse to comply with legitimate discovery requests.

*Id.*

In *Squires v. Textile Ins. Co.*, 250 N.C. 580, 581, 108 S.E.2d 908, 909 (1959), a judgment creditor, whose judgment against a motorist and his principals for injuries received in a collision had not been satisfied, brought an action to recover on a garage liability policy issued to one of the principals. The court found that testimony for the plaintiff in the coverage dispute by the motorist, a defendant in the underlying lawsuit, that he was acting as an employee and agent of the insured at the time of the accident was sufficient to submit the issue of coverage to the jury. *Id.*, 250 N.C. at 584, 108 S.E.2d at 911. The court also noted that:

> The defendant had an opportunity to defend in the plaintiff's action against the defendant's named insured. The judgment is, therefore, conclusive as to the insurer on the question of agency and damage. The only defense available to the defendant is that its policy does not cover the insured's liability.

*Id.*, 250 N.C. at 585, 108 S.E.2d at 911. Thus, even though the underlying lawsuit had determined the issue of agency and damages as to the liability of the motorist and his principals, the court allowed the plaintiff to offer additional testimony regarding agency and the nature of the motorist's use of the vehicle to determine specifically whether such use triggered coverage under the policy at issue.[16]

Thus, if there are issues relevant to coverage in this declaratory judgment action that were not necessarily determined in the underlying case, it is appropriate to gather

---

[16] *See also, State Auto Property and Cas. Ins. Co. v. Rankin,* No. COA02–1202, 2003 WL 21791834, at *4 (N.C. App. August 5, 2003) (attached as Exhibit K) (finding that causes of action in an underlying case for negligence were different from those pending in the resulting coverage lawsuit, and the court made no rulings with respect to coverage in the underlying suit; thus, neither res judicata nor collateral estoppel applied to the issues raised in the coverage dispute).

information beyond the evidence offered at trial to address those issues. The discovery requests at issue in this case go to such issues, and Betz is entitled to complete responses to the same.

For its part, BMIC cites authority that is readily distinguishable. BMIC refers to cases that generally discuss relevance not in the context of discovery disputes, but instead in the context of disputes, on the merits, over interpretation of policies ***where the language in question was determined to be unambiguous***. None of the cases cited by BMIC supports the proposition that only the insurance policy at issue and the evidence presented in the underlying lawsuit for damages are subject to discovery in a subsequent declaratory judgment action to determine coverage.

In fact, most of the cases cited by BMIC arise in the context of determining the relevance of evidence at trial on the merits, when analyzing the broader duty to defend an insured as compared to the more limited duty to indemnify.[17] The cases do not address the scope of discovery, and when they discuss relevance, they tend to involve limitations on extrinsic evidence do so most often when the evidence pertains to interpretation of ***unambiguous*** policy provisions. For example, in *Unger v. Liberty Mutual Insurance Co.*, 849 F. Supp. 839, 846 (E.D.N.Y. 1994), the court found that it need not consider extrinsic testimony with regard to the definition of a "basement" because the definition of basement in the policy at issue was clear and unambiguous. "Words and clauses [in the

---

[17] *E.g.*, *Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583 (1998) (evidence of insurer's employee's opinions is irrelevant in a duty to defend case); *Wackenhut Services, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 15 F. Supp.2d 1314, 1323 (S.D. Fla. 1998) (same).

policy] are to be given their ordinary meaning and effect and resort to extrinsic evidence is appropriate only to resolve ambiguities." *Id.*[18]

The cases offered by BMIC to avoid discovery in this case are distinguishable. While Betz believes the policy language is unambiguous in favor of coverage, it remains possible that the Court will find that the language is ambiguous. As indicated above, at least one other court notes that the policy language fails to define advertising activity, which could certainly lead this Court to conclude the language is, at least to that extent, ambiguous. Until a determination as to whether or not any relevant policy language is ambiguous or unambiguous has been made in this case, it is premature for BMIC to withhold information based on a claim that there is no set of facts which could possibly make the information relevant or likely to lead to the discovery of admissible evidence.

For all of the foregoing reasons, Betz argues that the objections are inappropriate and complete responses should be ordered for each of the discovery requests set forth above. To the extent BMIC is withholding information on the grounds of privilege, then Betz is entitled to a privilege log with respect to such information.

Betz respectfully requests that this Court once again order BMIC to respond to Betz's discovery requests and, given BMIC's efforts to squelch discovery to date, if the Court deems it appropriate, order that appropriate sanctions be imposed against the Defendant, including but not limited to an order directing payment of Betz's attorneys'

---

[18] See also, *U.S. Gypsum Co. v. Admiral Insurance Co.*, 643 N.E.2d 1226, 1254 (Ill. App. Ct. 1994) ("prior dealings of a party are a matter of parol evidence that should not be considered unless the language of the policies is ambiguous."); *Schnuck Markets, Inc. v. Transamerica Insurance Co.*, 652 S.W.2d 206, 212 (Mo. Ct. App. 1983) ("In the absence of ambiguity, extrinsic evidence may not be used to construe the meaning of a contract.").

fees and costs associated with the various discovery motions, or such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Troy A. Tessier (Admitted *Pro Hac Vice)*
Wallace K. Lightsey (D.S.C. I.D. No. 1037)
Troy A. Tessier (D.S.C. I.D. No. 6863)
Rita Bolt Barker (D.S.C. I.D. No. 10566)
WYCHE, P.A.
Post Office Box 728
Greenville, South Carolina 29602-0728
Telephone:     (864) 242-8200
Facsimile:      (864) 235-8900
E-Mail:   wlightsey@wyche.com
              ttessier@wyche.com
              rbarker@wyche.com

/s/ E. Steele Clayton IV
E. Steele Clayton IV (Bar No. 17298)
BASS, BERRY & SIMS PLC
Pinnacle at Symphony Place
150 3rd Avenue, Suite 2800
Nashville, Tennessee  37201
Telephone:     (615) 742-6205
Facsimile:      (615) 742-6200
E-Mail:        sclayton@bassberry.com

Dated:  September 27, 2012                    *ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Daniel W. Olivas, Esq.
LEWIS, KING, KRIEG & WALDROP, P.C.
Post Office Box 198615
Nashville, TN 37219
dolivas@lewisking.com

David A. Draper, Esq.
W. Paul Whitt, Esq.
LEWIS, KING, KRIEG & WALDROP, P.C.
Post Office Box 2425
Knoxville, TN 37901-2425
ddraper@lewisking.com

E. Steele Clayton IV, Esq.
BASS, BERRY & SIMS PLC
Pinnacle at Symphony Place
150 3rd Avenue, Suite 2800
Nashville, Tennessee 37201
sclayton@bassberry.com

/s/ Troy A. Tessier, Admitted *Pro Hac Vice*
Troy A. Tessier (D.S.C. I.D. No. 6863)